Case No. 23-3994

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

KELLI WILSON

Plaintiff-Appellant

v.

OHIO DEPARTMENT OF MENTAL
HEALTH & ADDICTION SERVICES.

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Case No. 2:20-CV-6184

## REPLY BRIEF OF APPELLANT KELLI WILSON

Marc D. Mezibov (OH No. 0082675)
MEZIBOV BUTLER
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513621.8833
mmezibov@mezibov.com

*Counsel for Plaintiff-Appellant Kelli Wilson*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Argument ................................................................................................................1

Conclusion .............................................................................................................22

Certificate of Compliance with F.R.A.P. 32 .........................................................24

Certificate of Service ............................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Choate*, 469 U.S. 287, 300 (1985) .......................................................14

*Bowerman v. International Union, United Auto., Aerospace and Agricultural Implement Workers of America, Local No. 12*, 648 F.3d 360 (6th Cir. 2011) .......20

*Bell v. Ohio State University,* 351 F.3d 240 (6th Cir. 2003) ...................................20

*Bloomfield v. Whirlpool Corp.,* 984 F. Supp.2d 771, 776 (N.D. Ohio 2013) ........22

*Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 782 (6th Cir. 1998) .................................................................................................................5,9

*City of Chicago v. International College of Surgeons,* 522 U.S. 156, 173 (1997) .22

*Deister v. Auto Club Ins. Assoc.*, 647 Fed. Appx. 652, 658 (6th Cir. 2016). .........13

*Fisher v. Nissan North American, Inc.,* 951 F.3d 409, 418 (6th Cir. 2020). ............6

*Hostettler v. College of Wooster,* 895 F.3d 844, 855 (6th Cir. 2018) ........................3

*Judge v. Landscape Forms, Inc.,* 592 Fed. Appx. 403, 407 (6th Cir. 2014) ....13, 17

*Kirilenko-Ison v. Bd. Of Educ. Of Danville Independent Schools,* 974 F. 3d 652, 669 (6th Cir. 2020) .............................................................................................16

*King v. Steward Trumbull Memorial Hospital, Inc.,* 30 F.4th 551 (6th Cir. 2022) .................................................................................................................6,9,11

*Lyons v. Metropolitan Government of Nashville and Davidson Cty.* 416 Fed. Appx. 483(Table) 491, 2011 WL 1042271 (6th Cir. 2011) .................................................20

*Melange v. City of Ctr. Line,* 482 F. App'x 81, 86 (6th Cir. 2012) ........................11

*Mobley v. Miami Valley Hosp.,* 603 Fed. Appx. 405, 414 (6th Cir. 2015) .............13

*Reed v. City of Memphis, Tennessee,* 735 Fed. Appx. 192 (2018) ..........................7

*Rorrer v. City of Stow*, 743 F.3d 1025, 1043 (6th Cir. 2014) ..................................3

*Williams v. AT&T Mobility Services LLC.,* 847 F.3d 384 (6th Cir. 2017) ..........4, 9

# ARGUMENT

## A. Introduction

In her principal brief, Ms. Wilson cited evidence of the Agency's hostility toward her and its pattern of rejection, denial, and deflection from its obligations as an employer to engage with her in good faith to identify and provide accommodations for her disabilities. Now, the Agency all but confirms these arguments and spends twenty-four out of twenty-seven pages of argument in its principal brief attacking Ms. Wilson's qualifications and conduct. But this attempt to divert the Court's attention from the Agency's undeniable failures has no legal merit. The Agency seeks to discredit Ms. Wilson as both an employee and as a litigant by characterizing her as a layabout and invalid, but the record shows otherwise. While Ms. Wilson was perhaps a less than savvy operator within the Agency bureaucracy, she was a competent auditor with a disability who sought to maintain her employment by legitimate means with an accommodation to which she was lawfully entitled.

Appellee doubles down on its arguments that Wilson was unfit and incapable of performing the essential functions of her position. According to Appellee, Ms. Wilson's need for intermittent medical leave rendered her *prima facie* unfit for the Auditor II position, and her request for intermittent medical leave as an accommodation was manifestly "unreasonable." This argument, of course, obviates

1

the need for further analysis of the Agency's failure to engage in an interactive process or provide an accommodation. But to accept this argument would be to accept that any employee who uses intermittent medical leave for a chronic disability is categorically unqualified for employment with the State. This is a wholly untenable conclusion that is contrary to both the spirit and the substance of the Rehabilitation Act and Sixth Circuit jurisprudence interpreting the Act. Appellee's arguments are fatuous, and, although the qualification issue was briefed for summary judgment, the district court declined to address it in its opinion.

### B. Ms. Wilson Was Qualified for the Auditor Position.

Appellee argues that Ms. Wilson cannot maintain her claims for either disability discrimination or failure to accommodate because she cannot establish that she is qualified for the Auditor II position she held at ODMHAS. According to Appellee, Ms. Wilson's history of using FMLA and short-term disability leave demonstrates that she cannot perform the essential function of "regular attendance." But this argument is without merit. Appellee hyperbolizes Ms. Wilson's absences, fails to define "regular attendance," and fails to refute record evidence that Ms. Wilson was qualified and fully able to perform the essential job duties of the auditor II position with an accommodation. Appellee's real objection is not to Ms. Wilson's performance, but to the requirements of the Rehabilitation Act. This is borne out by its arguments and its failure to consider a range of reasonable accommodations.

2

An employee's qualification for her position is an element of the *prima facie* case for disability discrimination, and the burden of establishing the element "is not an onerous one." *Hostettler v. College of Wooster,* 895 F.3d 844, 855 (6th Cir. 2018). "An employee is 'otherwise qualified for a position if [s]he can perform the essential functions of the job in question, with or without a reasonable accommodation." *Fortkamp v. City of Celina,* 159 F.Supp.3d 813 (N.D. Ohio 2016) (quoting 42 U.S.C. §1211(8)). Generally, "[a] job function is essential if its removal would fundamentally alter the position." *Hostettler*, 895 F.3d at 854 (citing *Mosby-Meachem v. Memphis Light, Gas & Water Div.* 883 F.3d 595, 603 (6th Cir. 2018). However, "[t]his analysis does not lend itself to categorical rules – it is 'highly fact specific'" *Id.* For this reason, "[w]hether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Rorrer v. City of Stow*, 743 F.3d 1025, 1043 (6th Cir. 2014) (quoting *Keith v. County of Oakland*, 703 F.3d 918, 923)). Indeed, "[a]lthough the employer's judgment receives some weight in this analysis, it is not the end-all –especially when an employee puts forth competing evidence. After all, the burden of making out a *prima facie* case is not an onerous one." *Hostettler,* 895 F.3d at 856.

Ms. Wilson's position description enumerated the discrete responsibilities of her position, which included performing on-site financial, compliance, and operational reviews of covered programs, data collection, and desk reviews of over

3

400 agencies and 53 ADAMHS Board audits for financial and operational compliance, among other various research and compliance related tasks. (*See,* Wilson Dep. R. 39, PageID 964-970; Ex. 2 R. 39-1, PageID 1185) "Regular attendance" is not explicitly defined or required per the position description, but one can assume that attendance is essential to the extent that it is necessary to perform the enumerated functions of her position. *Williams v. AT&T Mobility Services LLC.,* 847 F.3d 384 (6th Cir. 2017)("Regular in-person attendance is an essential function of most jobs, especially the interactive ones.")

With this in mind, the record shows that Ms. Wilson was able to perform the essential functions of her job with an accommodation in the form of intermittent leave. The clearest evidence of this fact is Ms. Wilson's performance of the essential functions of her job for five years of employment at the Agency, during which met all Agency performance standards. (Wilson Dep. R. 39 PageID 992-995).  Ms. Wilson's supervisor, Chiwayi Lin, testified that Ms. Wilson did her work efficiently, that he never had any problem with the quality of her work, and that she met the standards which she was required to meet. (Lin Dep. R. 28 PageID 340-341; Wilson Dep. R. 39 PageID 992-995). Ms. Wilson used medical leave throughout her tenure at ODMHAS and was certified for intermittent leave under the FMLA. (Ex. 5-8, R. 39-1, PageID 1195-1205). This did not substantively affect Ms. Wilson's work performance according to her supervisor: "But the quality of Ms. Wilson's work, I

4

did not have a problem with. Like I said, the only problem that we ran into from time to time was, you know, when she was absent, then, obviously, that work didn't get done until she—until she was able to come back and do it. So that, that was the only problem with the work." (Lin Dep. R. 28 PageID 341).

Despite the testimony of Ms. Wilson's supervisor that she competently performed her essential duties, the Agency argues that she was unqualified for her position because she used medical leave. The Agency contends that regular attendance is an essential duty of the Auditor II position, but it fails to define what it means by "regular attendance" or how Ms. Wilson demonstrated an inability to perform this function.

Although the Agency broadly suggests that performing "pre-scheduled work" is important to the position's function and that Ms. Wilson's use of medical leave make her unqualified to "keep a substantial predetermined work schedule," the only evidence the Agency can cite to support this claim is Ms. Wilson's use of FMLA leave. This argument is tenuous at best, and patently absurd at worst. Appellee asks this Court to find that Ms. Wilson was *prima facie* unqualified for her position because she used FMLA. This is an unreasonable conclusion, and one which the Sixth Circuit has declined to make in similar circumstances. *See, e.g., Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 782 (6th Cir. 1998)("the presumption [that uninterrupted attendance is an essential job

requirement] eviscerates the individualized attention that the Supreme Court has deemed 'essential' in each disability claim.")

Appellee's logic that Ms. Wilson's absences render her unqualified "does not apply if the absenteeism is caused by an underlying failure to accommodate a disability." *Fisher v. Nissan North American*, *Inc.,* 951 F.3d 409, 418 (6th Cir. 2020). According to this Circuit, "approved medical leave may be a reasonable accommodation and an inability to work while on such leave does not mean that an individual is automatically unqualified." *King v. Steward Trumbull Memorial Hospital, Inc.,* 30 F.4th 551 (6th Cir. 2022).(quoting *Terre v. Hopson*, 708 F. App'x 221, 228–29 (6th Cir. 2017)). Indeed, to hold that an employee is unqualified for her position because she used all or some of her FMLA leave entitlement "naturally leads to the conclusion that an individual who must occasionally request medical leave is unqualified." *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775 (6th Cir. 1998) (citing *Monette v. Electronic Data Systems Corp.* 90 F.3d 1173 (6th Cir. 1996)).

The Agency's argument that Ms. Wilson is unqualified is wholly unsupported by any facts in the record except for the evidence that she availed herself of her entitlement to FMLA leave and disability benefits, which the Sixth Circuit has held does not *prima facie* disqualify an employee from her position. There is no evidence in the record that *uninterrupted* attendance is an essential duty of Ms. Wilson's

6

position, and there is no evidence that Ms. Wilson failed to perform any of the duties enumerated in her job description or described by her supervisor, or even failed to "regularly" attend her position.

Instead of citing record evidence, Appellee attempts to manufacture a scenario in which a supposed absence could potentially have caused another auditor in her office to shoulder some greater work burden. But these speculative circumstances are neither consistent with, nor supported by, facts in the record. To the contrary, Ms. Wilson's intermittent use of leave did not cause an unequitable distribution of work, or any other undue burden or frustration of purpose in her department. (Lin Dep. R. 28, PageID 375). Recall that Ms. Wilson's supervisor testified that "the only problem that we ran into from time to time was, you know, when she was absent, then, obviously, that work didn't get done until she—until she was able to come back and do it." [1](Lin Dep. R. 28 PageID 341). Setting aside the the Agency's amped up arguments, the record is devoid of evidence to substantiate the catastrophic scenario that Appellee has invented. Instead, the record reflects that in five years of employment Ms. Wilson's use of intermittent medical leave neither rendered her incapable of performing her job duties nor visited any great hardship on her

---

[1] It is notable that Appellee relies upon Mr. Lin's declaration (R. 43-1), which was drafted and filed contemporaneously to its Motion for Summary Judgment, rather than his deposition testimony (R. 28), which he provided several months earlier, and in which he spoke favorably of Ms. Wilson's work performance. The declaration, however, casts Ms. Wilson in a different light. It is an attempt re-cast Mr. Lin's testimony in a manner that is more favorable to the Agency. To the extent that it does so, the declaration should be disregarded as a sham affidavit. *See Reed v. City of Memphis, Tennessee,* 735 Fed. Appx. 192 (2018).

colleagues. Indeed, Appellee would be hard pressed to argue that its failure to grant Ms. Wilson a reasonable accommodation on grounds that to do so would impose an undue burden.

### C. "Reasonable" Accommodations

#### a. Ms. Wilson Requested Reasonable Accommodations

Appellee further argues that Ms. Wilson cannot establish that she was qualified for the Auditor II position with a reasonable accommodation because "the single accommodation [Ms. Wilson] was willing to accept---unlimited, unscheduled, unpaid leave--- is not 'reasonable as a matter of law." (Doc. 15, P. 28). This argument is misleading. In fact, Ms. Wilson requested multiple accommodations, including unpaid leave, flex-time, and remote work. Moreover, unpaid medical leave is a reasonable accommodation and is, by its very nature, "unscheduled." This is another attempt to divert attention away from the Agency's arbitrary denial of Ms. Wilson's requests for accommodation and its refusal to engage in any interactive process onto Ms. Wilson herself.

The Agency's argument is couched in its unsupported assertion that regular attendance is an essential duty of the Auditor II position that is incompatible with an employee's use of medical leave. Moreover, unpaid medical leave as an accommodation is not mutually exclusive with an employee's fulfillment of the attendance obligations of her position. The Sixth Circuit has observed that

"[m]edical leave as an accommodation is not a novel concept," and that, as opposed to regular attendance, "[t]he presumption that *uninterrupted* attendance is an essential job requirement improperly dispenses with the burden-shifting analysis set forth in *Monette*." *Cehrs,* 155 F.3d 775 (citing *Monette v. Electronic Data Systems Corp.* 90 F.3d 1173 (6th Cir. 1996)). Indeed, while "[r]egular in-person attendance is an essential function of most jobs, especially the interactive ones," regular in-person attendance (which the Agency claims is essential) does not foreclose the availability of medical leave as an accommodation, nor does an employee's use of medical leave demonstrate that she is unqualified to perform that job function. *Williams v. AT&T Mobility Services LLC.,* 847 F.3d 384 (6th Cir. 2017). Indeed, if that were the case, "this argument would bar any in-person employee from obtaining temporary medical leave as an accommodation." *King v. Steward Trumbull Memorial Hospital, Inc.,* 30 F.4th 551, 561 (6th Cir. 2022).

For these reasons, the Sixth Circuit held in *King* that, "the 'general rule' espoused in [*E.E.O.C. v. Ford Motor Company,* 782 F.3d 753 (6th Cir. 2015)]—that 'regularly attending work on-site is essential to most jobs,'—cannot automatically apply where medical leave would enable the employee to return to work and perform the essential job duties," and "'approved medical leave may be a reasonable accommodation and an inability to work while on such leave does not mean that an individual is automatically unqualified." *Id.* (quoting *Terre v. Hopson*, 708 F. App'x

9

221, 228–29 (6th Cir. 2017)). Although this law critically undermines Appellee's arguments, it nonetheless argues that Ms. Wilson's accommodation request for unpaid intermittent medical leave is unreasonable under the factors enumerated in *King*: "(1) the amount of leave sought; (2) whether the requested leave generally complies with the employer's leave policies; and (3) the nature of the employee's prognosis, treatment, and likelihood of recovery." *Id.* But the Agency's analysis of these factors is critically flawed.

First, Ms. Wilson did not only request some form of medical leave. She testified that she also requested flex time, remote work, and the ability to use non-medical leave as medical leave to accommodate her disability. (*See, e.g,.* R. 39-2, PageID 1308-1309; Lin Dep. Doc 28 PageID 335-338; R. 28-1 PageID  448-452, Wilson Dep. R. 39, PageID 1117). The fact that unpaid medical leave is of central importance in this case now is not because it was the only accommodation that Ms. Wilson requested or would accept, but because it is the only requested accommodation that the Agency acknowledges.

Second, Ms. Wilson did not request or require an "inexhaustible amount of leave." (Doc. 15, Page 29). This fabulous claim appears nowhere in the record. To be clear, Ms. Wilson never requested infinite and unconditional medical leave. What she did request was some form of intermittent medical leave as a stop-gap measure to enable her to continue using or re-certify for FMLA leave. (*See* R. 39-2, PageID

1308-1309; R. 58, PageID 2625 at FN 2). The precise parameters of these requests could –and should—have been explored by the Agency *before* terminating Ms. Wilson. Instead, it declined to engage in an interactive process, and told her "[w]e're not giving you your own special bank of leave that you can use any time you want." (Thomson Dep. R. 29 PageID 510). But contrary to Appellee's argument, the Sixth Circuit has found that a "special bank of leave" *is* a reasonable accommodation for an employee's intermittent flare-ups of her disability. *See King,* 30 F.4th 551.

Appellee also argues that the chronic nature of Wilson's disability "made forever uncertain whether her symptoms would decrease in frequency and severity for her to work full-time as she had prior to spring 2016." (Doc. 15, P. 30). Put another way, the Agency argues that intermittent leave is not a reasonable accommodation because it had no way of knowing how long Ms. Wilson would need the accommodation. This argument is bewildering, both because it analyzes intermittent leave as if it were continuous leave, and because it presupposes without any factual support that Ms. Wilson cannot fulfill the essential duties of her position while intermittently using medical leave.

If Ms. Wilson's testimony is not ample evidence of the Agency's disdain for its employee's rights under the Rehabilitation Act, Appellee's acknowledgement that "automatic termination of employees whose medical conditions do not improve after one year is 'rather standard,'" certainly underscores this point. (Doc. 15 Page

31). Furthermore, *Melange v. City of Ctr. Line*, 482 F. App'x 81, 86 (6th Cir. 2012), on which Appellee relies, concerns *continuous* leave, not intermittent leave. Intermittent medical leave, like the kind afforded Ms. Wilson under the FMLA in spring 2016 and thereafter requested as an accommodation, is by its nature chronic and oftentimes unpredictable—that is the nature of the underlying disability. But this does not render the accommodation unreasonable. As has been discussed at length above, Ms. Wilson's use of intermittent leave neither rendered her unqualified for her job nor inflicted any undue burden on the department or her colleagues.

### b.  Ms. Wilson Made Requests for Multiple Accommodations

As a final "loose end," the Agency claims that many, if not all of Ms. Wilson's requests for accommodation were not legally cognizable requests requiring initiation of an interactive process. The Agency's argument on this point is completely inscrutable. While Appellee purports to class Ms. Wilson's accommodation requests into three categories for analysis, it makes no effort to identify which specific requests it is objecting to and for what reason. What little can be parsed is that Appellee objects to some of Ms. Wilson's requests because she failed to identify with sufficient particularity a specific accommodation; or objects to some of her requests because granting those requests would require the Agency to make exceptions to its policies for Ms. Wilson; or it objects to others because those requested accommodations would sufficiently accommodate Ms. Wilson's

disability. These arguments are unsupported by law or facts. Appellant will address each in turn.

First, Appellee incorrectly claims that Ms. Wilson needed to "identify a need arising from a *specific medical diagnosis* identifying a *specific accommodation* for a *specific need*." (Doc. 15, p. 32)(emphasis added). To the contrary, there is "no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation." *Judge v. Landscape Forms, Inc.,* 592 Fed. Appx. 403, 407 (6th Cir. 2014). A plaintiff is **not** required to identify a specific medical diagnosis, or identify a specific, perfect accommodation. The plaintiff must simply "'make it clear from the context that the request is being made in order to conform with existing medical restrictions.'" *Deister v. Auto Club Ins. Assoc.*, 647 Fed. Appx. 652, 658 (6th Cir. 2016). The request needs only to be such that the employer is not required to "speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Judge* 592 Fed. Appx. at 407. Each of Ms. Wilson's requests, including her requests for additional medical leave, undoubtedly meets this requirement. (*See, e.g,.* R. 39-2, PageID 1308-1309; Lin Dep. Doc 28 PageID 335-338; R. 28-1 PageID  448-452, Wilson Dep. R. 39, PageID 1117).

Second, Appellee argues that some of Ms. Wilson's requests would not fully accommodate her disability. But "'an employee's initial request does not need to

identify the perfect accommodation from the start." *King* 30 F.4th at 564 (citing *Mobley v. Miami Valley Hosp.,* 603 Fed. Appx. 405, 414 (6th Cir. 2015) ("We have also held that a jury might infer from the context of a request that it is driven by medical restrictions)). Instead, identifying the "perfect" accommodation is a purpose of the *interactive process*, in which the Agency, "must participate in [the interactive process] good faith and conduct and individualized inquiry into possible accommodations." *Id.* Ms. Wilson identified multiple *potential* accommodations. Whether flex time or additional medical leave or remote work ultimately would have proved to be the "perfect" accommodation is purely speculative. The point is that the Agency denied Ms. Wilson's requests out of hand, not out of a concern that they would not sufficiently accommodate her, but because it did not believe she was entitled to *any* accommodation.

This is made abundantly clear by Appellee's third and most ridiculous argument. It objects to some of Ms. Wilson's requests because they would require the Agency to modify or except Ms. Wilson from its leave policies. This argument is deeply revealing. The fundamental purpose of an "accommodation" is to affirmatively modify workplace policies to accommodate an employee's disability. *See e.g., Alexander v. Choate*, 469 U.S. 287, 300, FN20(1985) ("a grantee need not be required to make "fundamental" or "substantial" modifications to accommodate the handicapped, it may be required to make "reasonable" ones.")(quoting *Southeastern*

14

*Community College v. Davis,* 442 U.S. 397, 412 (1979)).  The Agency's arguments consistently underscore its rejection of the purpose and rights afforded employees under the Rehabilitation Act and ADA. The Agency simply does not believe that Ms. Wilson is entitled to any accommodation that would require even the slightest variance of its policies. Needless to say, the Agency's argument is meritless; an accommodation is not unreasonable merely because it would require a change in a workplace policy.

### D. Interactive Process

The Agency's arguments regarding the interactive process misapprehend both the facts and the law.  The Agency makes two claims: (1) that Ms. Wilson caused the breakdown of the interactive process by refusing to provide documentation of her disability to the Agency; (2) that the Agency sufficiently accommodated Ms. Wilson by permitting her to use intermittent FMLA leave and later short-term disability.

1. **Ms. Wilson Provided voluminous medical documentation of her disability**.

The Agency first argues that Ms. Wilson voluntarily withdrew from the accommodation process by refusing to submit ADA-request paperwork and medical documentation. But in the two years before the Agency terminated her, Ms. Wilson provided it with over half a dozen medical certifications signed by her physician precisely describing the nature of her disability. (*See* Ex. 5, 6, 7, 11, 12, 13, 15, 16,

17, 18, 19, 20, 21, 22, 24, 25, 26, 28, 31, R. 39-1, 39-2, PageID 1194-1257, 1258-1278). Each of these applications was received and processed by ODMHAS. Ms. Wilson's applications for short-term disability were forwarded to the Department of Administrative Services for approval, while her applications for FMLA were filed with ODMHAS. (Winland Dep. R. 41, PageID 1725-28).

The Agency's argument is obviously baseless. It complains because the forms that Ms. Wilson provided were labeled "Family and Medical Leave Act" or "Short-Term Disability," and not "Americans with Disabilities Act" or "Reasonable Accommodation." But the law does not require that an employee precisely label her medical documentation one way or another, nor does it permit an employer to reject otherwise valid medical documentation simply because it would prefer the provider used a different form.   Indeed, the interactive process is both *informal* and *mandatory*. *Kirilenko-Ison v. Bd. Of Educ. Of Danville Independent Schools,* 974 F. 3d 652, 669 (6th Cir. 2020). The employer cannot use bureaucratic technicalities to deny an employee her rights to a reasonable accommodation. Ms. Wilson requested accommodations and provided medical documentation, but the Agency refused to engage in the interactive process unless it received the same information on a different form. This argument broaches the issue of which party was responsible for the breakdown of the process. This is an issue of fact.

16

## 2. The Agency did not Reasonably Accommodate Ms. Wilson.

The Agency's claim that it "had been working with Wilson to manage her symptoms using FMLA and short-term disability, hoping her symptoms would stabilize to pre-2016 levels," is disingenuous and misleading. The Agency regarded Ms. Wilson's use of FMLA with deep suspicion and accused her of misusing her allotment to take long weekends. (Wilson Dep. R. 39 PageID 1006-1007). The Agency then forced Ms. Wilson to use her short-term disability benefit to attempt to preserve her employment, despite her objection that short-term disability was unreasonable and unnecessary, and her requests for an alternative accommodation. (Wilson Dep. R. 39 PageID 1016-18).

The Agency's argument that short-term disability was some form of accommodation is ludicrous. First, short-term disability is not a reasonable accommodation because it did not allow Ms. Wilson to work. Second, the Agency engaged in *no* interactive process with Ms. Wilson, and, in fact, ignored her attempts to explain that short-term disability was not a reasonable option. The interactive process requires the employer to engage in an "individualized inquiry" to "'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Judge,* 592 Fed. Appx. at 407. The Agency did exactly the opposite and it ignored Ms. Wilson's explanations that her condition only required sporadic days off on a reactive basis when she was

experiencing a panic attack/flare-up, which was incompatible with the large blocks of pre-approved leave offered by short-term disability. Instead of identifying potential accommodations it presented Ms. Wilson with only two options: termination at the instant her FMLA allotment expired; or short-term disability. (Wilson Dep. R. 39 PageID 1017-1018; Thomson Dep. R.29 PageID 519). This is neither an interactive process, nor a reasonable accommodation. To the contrary, had the Agency "worked with" Ms. Wilson, she easily could have been accommodated by for example, allotting her additional intermittent leave pursuant with her FMLA certification until her annual allotment refreshed. Instead, the Agency elected to, in effect, railroad her into vicious cycle of short-term disability.

### 3. Wrongful Termination

Finally, the Agency argues that Ms. Wilson cannot maintain her wrongful termination claims due to her alleged withdrawal from the interactive process. The breakdown of the interactive process has been addressed at length, and the Agency is ultimately responsible for its refusal to initiate the process. But the Agency also claims that Ms. Wilson cannot maintain an indirect evidence-based claim for discrimination under the *McDonnell Douglas* framework. According to Appellee, Wilson fails to argue the "solely-by-reason of" element of her wrongful termination claim. But, again, this issue was extensively briefed at summary judgment. The District Court did not analyze this matter under an indirect evidence framework, and

Ms. Wilson did not reproduce her argument in her principal brief, but will address it in brief here.

"An employer cannot deny an accommodation that the worker claims will make him able to perform the job and then argue that the worker's allegedly correctable performance justified termination." *Gilday v. Mecosta County,* 124 F.3d 760, 766 (6th Cir. 1997) this is effectively what the Agency has done. It terminated Ms. Wilson for excessive absences which could have been avoided had the Agency granted the reasonable accommodations Ms. Wilson repeatedly requested.

There is no dispute that Ms. Wilson was terminated due to unexcused absences. (Ex. 7, R.27-2 PageID 256) There is no real argument that these absences were caused by Ms. Wilson's disability. (Amann Decl. ¶13, Wilson Dep. R.39 PageID 1141). The Agency never considered or provided Ms. Wilson an accommodation for her disability. Finally, the Agency cannot demonstrate that any of the specific accommodations that Ms. Wilson requested were unreasonable or would have caused an undue burden. Whether proven by direct or indirect evidence, there exists at the least a genuine issue of material fact as to whether Ms. Wilson was terminated solely because of her disability.

## E. Statute of Limitations/ Continuing Violations

Appellee argues only two points regarding the continuing violation issue. First it claims that the Agency "responded to each of [Ms. Wilson's requests for

accommodation] with prompt denials made while she was working. Second, Appellee argues that the Agency's free-standing bad faith in the interactive process cannot serve as the basis for a "continuing violation," because it is not an independent violation of the law.  This is a disingenuous argument, because while Ms. Wilson does not dispute that the Agency denied her requests for accommodation, the claim that the Agency responded with "prompt" denials is not supported by the testimony that Appellee cites.

Under the "serial violation" scheme "plaintiffs are ... precluded from establishing a continuing violation exception by proof that the alleged [wrongful] acts ... occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Bowerman v. International Union, United Auto., Aerospace and Agricultural Implement Workers of America, Local No. 12*, 648 F.3d 360 (6th Cir. 2011). *Bowerman,* supra. and *Bell v. Ohio State University,* 351 F.3d 240 (6th Cir. 2003) concern entirely different circumstances. Both cases concern discrete wrongful acts that resulted in unconnected and distinct sets of consequences. This Court has emphasized that those actions with "discrete consequences," are not continuing violations. *Lyons v. Metropolitan Government of Nashville and Davidson Cty.* 416 Fed. Appx. 483(Table) 491, 2011 WL 1042271 (6th Cir. 2011). The consequences of denials of accommodation requests are distinct and discrete and the consequences of each additional denial are overlapping and cumulative.

20

This case presents a consistent pattern of repeated discriminatory acts over a period of months where the players are the same, the requests are the same, the acts are the same, and the results are the same. The consequences of these discriminatory actions were not discrete, and the damage caused to Ms. Wilson by the Agency's pattern of serial violations--the denial of her increasingly desperate requests for accommodations—persisted and accumulated up and until her termination. Ms. Wilson's prior requests for accommodation were therefore "sufficiently related to those occurring within the limitations period," and should be deemed continuing for the purposes of tolling of the statute of limitations. *Id.*

## F. State Sovereign Immunity

Appellee invokes for the first time on appeal the doctrine of sovereign immunity. This is the second untimely defense raised by appellee, the first being the statute of limitations defense, which it did not litigate until after summary judgment had been fully briefed, and after it had been prompted by the district court. Appellee urges this Court to treat immunity "as a defense that arises only if the sovereign would otherwise lose on the merits." (Doc. 15, Page 39)(citing *Nair v. Oakland County Cmty. Mental Health Auth.,*443 F.3d 469, 474 (6th Cir. 2006). In other words, Appellee asks this Court to only permit this untimely raised defense to bar a meritorious claim against it. The unfairness of this request is obvious.

Appellee also acknowledges the Sixth Circuit's decision in *Ku v. State of Tennessee*, which deemed the immunity defense waived when it raised the defense only on appeal and after substantial discovery and a motion for summary judgment. 322 F.3d 431, 432 (6th Cir. 2003). These circumstances parallel those here where this case has been in litigation for four years, substantial discovery has been conducted, appellee appeared before and submitted to the jurisdiction of the district court at summary judgment and the appellee raises the sovereign immunity defense for the first time on appeal.

Appellee submits that the interests of procedural and substantive fairness and judicial economy militate the waiver of the sovereign immunity defense. These same interests support the exercise of supplemental jurisdiction over Ms. Wilson's state law claims, which arise from the same common nucleus of operative fact and are analyzed under the same legal framework as her federal claims. *See City of Chicago v. International College of Surgeons,* 522 U.S. 156, 173 (1997) (enumerating factors supporting exercise of supplemental jurisdiction); *Bloomfield v. Whirlpool Corp.,* 984 F. Supp.2d 771, 776 (N.D. Ohio 2013)( ". . . analysis of Bloomfield's claim under the ADA will apply equally to her claim under O.R.C. § 4112.02").

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Kelli Wilson respectfully requests that the Court reverse the District Court's decision granting summary

judgment to ODMHAS and dismissing her claims of violations of the Rehabilitation

Act.

Dated: April 26, 2024                    /s/ Marc D. Mezibov
                                         Marc D. Mezibov (OH No. 0019316)
                                         Mezibov Butler
                                         615 Elsinore Place, Suite 105
                                         Cincinnati, OH 45202
                                         Phone: 513.621.8800
                                         Fax: 513.621.8833

                                         *Counsel for Plaintiff-Appellants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify the following:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5281 words, excluding the parts of the brief exempted by the Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: April 26, 2024                    /s/ Marc D. Mezibov_____
                                         Marc D. Mezibov (OH No. 0019316)

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically field the foregoing with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit on April 26, 2024, by using the appellate CM/ECF system.  I certify that service will be accomplished on that date by the appellate CM/ECF system on the following counsel for Appellees:


Nicholas A. Cordova

Thomas Elliot Gaiser

Michael Jason Hendershot



Dated: April 26, 2024                    /s/ Marc D. Mezibov_____
                                                    Marc D. Mezibov (OH No. 0019316)